UNITED STATES *v.* MURPHY & Co. (No. 1051).[1]

MACHINES FOR MANUFACTURING JUTE YARNS.

    The squeezers, doublers, spreaders, drawing frames, roving frames, and spinning frames of the importation operate directly on the jute and are all suitable, necessary, and are actually used for the making of jute yarns of the accepted and recognized commercial sizes. They are to be classified as jute manufacturing machinery, and are dutiable as such under paragraph 197, tariff act of 1909.

### United States Court of Customs Appeals, May 26, 1913.

APPEAL from Board of United States General Appraisers, Abstract 30011 (T. D. 32858).

[Affirmed ]

*William L. Wemple,* Assistant Attorney General (*Charles E. McNabb,* assistant attorney, of counsel; *Martin T. Baldwin,* special attorney, on the brief), for the United States.

*Curie, Smith & Maxwell* (*Thomas M. Lane,* of counsel), for appellees.

    Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Certain machines used in the manufacture of jute yarns and designated as squeezers, doublers, spreaders, drawing frames, roving frames, and spinning frames were assessed for duty by the collector

---

[1] Reported in T. D. 33516 (24 Treas. Dec., 954).

of customs at the port of New York at 45 per cent ad valorem under the provisions of paragraph 199 of the tariff act of 1909, which paragraph reads as follows:

199. Articles or wares not specially provided for in this section, composed wholly or in part of iron, steel, lead, copper, nickel, pewter, zinc, gold, silver, platinum, aluminum, or other metal, and whether partly or wholly manufactured, forty-five per centum ad valorem.

The importers protested that the articles imported were jute-manufacturing machinery, and that therefore they should have been assessed for duty at 30 per cent ad valorem under the provisions of paragraph 197, which in part reads as follows:

197. Cash registers, jute-manufacturing machinery, linotype and all typesetting machines, machine tools, printing presses, sewing machines, typewriters, and all steam engines, thirty per centum ad valorem; * * *.

The Board of General Appraisers sustained the protest, and the Government appealed.

The appraiser returned the goods as machinery used in the manufacture of flax and therefore dutiable at 45 per cent ad valorem as a manufacture of metal not specially provided for. Beyond stating that the spinning frames are used for the spinning of jute and that the other machines are preparing machinery necessary for the manufacture of jute and flax yarns, the record furnishes little or no information as to the special work performed by the several machines. However, we think we may assume that the doublers, spreaders, drawing frames, and roving frames are designed to be used for drawing the fiber of carded jute into a filament which is converted into yarn by the spinning frame. The testimony shows without contradiction that all the machines are of the type of those used for the manufacture of flax and that there is no machinery designed for the drawing, roving, or spinning of jute exclusively. The doublers, spreaders, and drawing, roving, and spinning frames which are fitted for the making of a jute yarn may be and are used for the making of a flax yarn of the same size. Machines adapted to the manufacture of a finer yarn than 16-lea flax are not commercially practicable for the manufacture of jute. It is undisputed that all of the machines imported are adapted to the making of a yarn as coarse as 8-pound jute or as fine as 16-lea flax, which corresponds to 3-pound jute, the minimum commercial size of jute.

The Government admits that the spinning frames are jute-manufacturing machinery within the intention of paragraph 197, but contends that the doublers and spreaders and the drawing and roving frames can not be so classified, inasmuch as they are actually used chiefly for the manufacture of flax. It is true that when adjusted to the making of 3-pound jute or 16-lea flax the machines involved in this appeal are used by the importers in the making of jute and flax yarns in the proportion of about two-fifths jute and three-fifths

flax. It is equally true, however, that these very same machines are capable of making and are used in making a coarser yarn than 16-lea flax and as coarse a yarn as 8-pound jute, and that when employed to make yarns coarser than 3-pound jute or 16-lea flax they produce more jute yarns than flax yarns. More than that, the testimony is wholly uncontradicted that for the manufacture of jute there are no machines known to the world except such as those imported, and that as a world proposition machinery of the class imported is used more for the manufacture of jute than for the manufacture of flax. Presumably Congress had all these facts before it when the tariff act of 1909 was under consideration. Nevertheless it provided broadly that jute-manufacturing machinery should bear a duty of 30 per cent ad valorem and thereby effected a reduction of 15 per cent in the rate which theretofore had been borne by such machinery. The reduction in duty thus accomplished was evidently designed to encourage the manufacture in this country of commercial jute yarns, and having that legislative purpose in mind it can hardly be assumed that Congress intended that the designation "jute-manufacturing machinery" should embrace only those machines which were designed to produce a yarn coarser than 8-pound jute. Yarns varying in size from 3-pound to 8-pound jute are commercial jute yarns just as much as are the coarser yarns, and there is nothing in the act or in the language or history of the paragraph which affords the slightest reason for supposing that a jute machine for making one commercial size of yarn was to be covered by the provision and a machine for making another commercial size was to be excluded from its operation. If Congress had really intended that the 30 per cent rate should be applied only to the jute machines capable of producing certain sizes of commercial jute, we think it would have so declared, and not having done so we must decline to exclude from the favoring rate the only machinery available for the manufacture of the finer commercial jute yarns.

It may be that in commerce and trade the term "jute-manufacturing machinery" has a limited or special meaning which excludes the appliances in controversy, but if so the burden was on the Government to establish that fact by proper evidence. No evidence having been introduced showing or tending to show that the designation "jute-manufacturing machinery" has a special commercial signification, we must presume that the meaning of the term does not differ from that commonly and popularly assigned to it. The squeezers, doublers, spreaders, drawing frames, roving frames, and spinning frames operate directly on the jute and are all suitable necessary, and actually used for the making of jute yarns of the accepted and recognized commercial sizes, and are therefore entitled to be classified as jute-manufacturing machinery.

The decision of the Board of General Appraisers is *affirmed*.